UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-06891-KK-JDEx** | Date: | November 18, 2026 |
| Title: | ***A.Z. v. Thomas Giles, et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
| None Present | None Present |

**Proceedings:** **(In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 2]**

## I. INTRODUCTION

On November 16, 2026, petitioner A.Z., A# 231-848-784 ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Thomas Giles, David J. Venturella, Markwayne Mullin, Todd Blanche, and Warden Adelanto Detention Center (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Application for a Temporary Restraining Order, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 2, Motion ("Mot."); Dkt. 7.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II. BACKGROUND

### A. RELEVANT FACTS

Petitioner is a 23-year-old citizen and national of Kyrgyzstan. Pet. ¶ 4. On September 16, 2021, Petitioner was lawfully admitted to the United States on an F-1 nonimmigrant visa. Id. ¶ 7. On March 31, 2022, her student status was terminated. Id. ¶ 8. On August 4, 2022, Petitioner filed a

Form I-589 application for asylum and withholding of removal with the United States Citizenship and Immigration Services ("USCIS"). Id. On August 24, 2022, Petitioner appeared for her biometric services appointment and was subsequently granted employment authorization by USCIS. Id.; see also Dkt. 1-1, Declaration of Magomed Gusein Gasanov ("Gasonov Decl.") ¶ 2, Dkt. 1-3 at 42-45, Ex. H.

For over four years, Petitioner has lived openly in the United States. See Pet. ¶ 45. She has no criminal history, has never been placed in removal proceedings, and has never failed to appear for any required hearings or appointments. Id. ¶ 9.

On August 28, 2026, Petitioner was arrested and detained by ICE as she arrived at the Los Angeles International Airport after a domestic flight from Honolulu, Hawaii. Id. ¶ 10. Since then, she has been detained at Adelanto ICE Processing Center, where she remains today. See Dkt. 1-2, Declaration of A.Z. ("Pet. Decl.") ¶ 1.

## B. PROCEDURAL HISTORY

On November 16, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

**Count One:** Fifth Amendment Due Process;

**Count Two:** Eighth Amendment, as to the denial of bail;

**Count Three:** Violation of Due Process and Abuse of Discretion, as to the Immigration Judge's flight-risk determination; and

**Ground Four:** Violation of Substantive Due Process.

Pet. ¶¶ 42-81.

On the same day, Petitioner filed an Ex Parte Application for Temporary Restraining Order, seeking, among other relief, an order requiring her immediate release from Respondents' custody and enjoining her re-detention while the action is pending. Mot. at 2.

On November 17, 2026, the Court converted the Ex Parte Motion for Temporary Restraining Order to the instant Motion and ordered Respondents to submit an Opposition "no later than 12:00 PM PT on November 18, 2026." Dkt. 7.

Respondents filed no opposition. Hence, on November 18, 2026, Petitioner filed a Notice of Non-Opposition in lieu of a reply. Dkt. 8.

This matter, thus, stands submitted.

/ / /

/ / /

/ / /

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, . . . known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A. THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, Petitioner is likely to succeed on the merits of her claim that her detention without advance notice and a pre-deprivation hearing placing the burden of proof on Respondents violated her right to procedural due process.[1]

#### 1. Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, "the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

---

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claims at this time.

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

**2. Analysis**

As an initial matter, Local Rule 7-12 provides a party's "failure to file any required document . . . may be deemed consent to the granting . . . of the motion[.]" C.D. Cal. L.R. 7-12. Here, Respondents failed to file an opposition which the Court deems consent to granting of the Motion. See id.

Turning to the merits, the Court finds Petitioner is likely to succeed on the merits of her claim that her detention without notice and a pre-deprivation hearing violated her right to procedural due process under the Mathews test.

First, Petitioner has a substantial private interest in remaining out of immigration custody. Petitioner lawfully entered the United States on September 16, 2021, on an F-1 nonimmigrant visa. Pet. ¶ 8. Her student status was terminated on March 31, 2022. Id. Thus, when Petitioner filed her asylum application with USCIS on August 4, 2022, Petitioner knowingly and intentionally alerted Respondents to her presence in the country, yet Respondents "made a decision not to detain [her]" during the pendency of her application. Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). Hence, for over four years, Respondents, with "full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [her] immigration application[] . . . continuously elected not to detain [her] while exercising authority over [her] legal proceedings." Zhou v. Janecka, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, see 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed Petitioner's asylum application. Zhou, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Petitioner relied on this liberty interest to live freely with "friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.

The length of Petitioner's freedom pending the adjudication of her asylum application thus only strengthens her interest in her continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Here, the government permitted Petitioner to live openly for over four years after she filed her asylum application. See Pet. ¶ 8. Additionally, Petitioner maintained a clear criminal record and has never failed to appear for any hearing or appointment. Id. ¶ 9. The evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate she does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of [her] liberty, 'the risk of an erroneous deprivation of liberty is high.'" Zhou, 2026 WL 2365550, at *6 (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could simply detain Petitioner at any time, regardless of whether her detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of her liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. Respondents filed no Opposition to the Motion and thus fail to identify any material change in circumstances justifying Petitioner's detention. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact "the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (noting government has power to re-arrest petitioner at any point "but its interest in doing so without a hearing is low").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before detaining her, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh, 803 F. Supp. 3d at 1048). Indeed, Respondents' delay in arresting Petitioner for nearly seven years after notice of his visa overstay only confirms "a pre-deprivation hearing was entirely feasible and required." Galeano-Ariza v. Warden, No. EDCV 26-04081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, Respondents' interest in detaining Petitioner without a pre-detention hearing is low.

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of her claim that her detention without notice and a pre-deprivation hearing with Respondents bearing the burden of proof violated her right to procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

## B. THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). If a plaintiff establishes a likelihood of success on a claim alleging a constitutional violation, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023). Further, "[d]eprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, Petitioner's detention without notice or a pre-deprivation hearing violated her right to procedural due process. Hence, Petitioner will be irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R., 791 F. Supp. 3d at 1037 (finding irreparable harm where the petitioner would be "detained and . . . not . . . entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause"). Moreover, Petitioner is currently experiencing acute medical issues and has not received access to the required medical care as a result of her detention. Pet. ¶¶ 21-28. See Hernandez, 872 F.3d at 995.

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act).

Here, because Petitioner has demonstrated a likelihood of success on her procedural due process claim, the balance of equities and public interest "tip[] sharply" in her favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents' failure to respond indicates a lack of any convincing governmental interest in detaining Petitioner.

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

* * *

Thus, because all four Winter factors weigh in her favor, Petitioner is entitled to injunctive relief in the form of her immediate release. Petitioner's release is necessary to maintain the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's freedom from immigration custody pending the final resolution of her asylum application. See J.A.E.M., 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante – 'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025)). Accordingly, Petitioner's immediate release is the appropriate form of relief. See Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion is **GRANTED**;[2]
2. Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner A.Z., A# 231-848-784, from their custody;
3. Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon her release;

---

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

4. Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226 without providing her a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that her physical custody is required;
5. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case;
6. Petitioner is **ORDERED** to file a status report **no later than three (3) days from the date of this Order,** regarding Respondents' compliance with this Order; and
7. Respondents are **ORDERED** to file an Answer to the Petition, if any, within five (5) days from the date of this Order. Alternatively, the parties shall file a stipulated order and judgment granting the Petition on the same grounds and under the same terms as this Order, with all appellate rights reserved. **If for any reason the parties cannot comply with this instruction, the parties shall file a status report no later than five (5) days from the date of this Order explaining why.**

This Order shall remain in effect until further order by the Court. Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.